IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED
JUL 10 2019
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| CONCRETE LOG SYSTEMS, INC., d/b/a/ EVERLOG SYSTEMS, <br><br> Plaintiff, <br><br> vs. <br><br> BETTER THAN LOGS, INC., <br><br> Defendant. | CV 18–34–M–DWM <br><br> ORDER |

This suit arises out of Defendant Better Than Logs, Inc.'s infringement of a patent for simulated log siding held by Plaintiff Concrete Log Systems, Inc. d/b/a Everlog Systems ("Everlog"). Pending before the Court is Everlog's application for default judgment. (Doc. 29.) Everlog seeks money damages and an injunction prohibiting Better Than Logs from making, using, advertising, or selling infringing products. Everlog is entitled to judgment against Better Than Logs for $978,909.00, and a permanent injunction.

### BACKGROUND

Everlog is a Montana corporation that manufactures cement-based building materials that have the appearance of logs but are more resilient than wood. (Doc. 31 at ¶ 3.) It holds five U.S. patents for simulated log products. (*Id.* at ¶ 5.) On February 15, 2018, Everlog filed this suit against Better Than Logs, bringing federal

1

claims for patent infringement, false designation of origin and unfair competition, and false advertising, and a state law claim for unfair competition. (Doc. 1.) Specifically, Everlog alleged Better Than Logs's sale of simulated log siding infringes U.S. Patent No. 9,695,598 ("'598 patent"), (*id.* at ¶¶ 7–23), and that Better Than Logs falsely advertised its products as made in the United States when the products were substantially manufactured in China, (*id.* at ¶¶ 25–59).

Better Than Logs waived service, (Doc. 4), and filed an answer and counterclaim on May 15, 2018, (Doc. 7). On July 17, 2018, the parties attended a preliminary pretrial conference in Missoula, Montana. (Doc. 19 at 1.) On July 19, 2018, the Court denied Better Than Logs's motion for a stay pending the Patent and Trademark Office's reexamination of the patent at issue. (Doc. 20.) The Patent and Trademark Office has since confirmed the validity of the '598 patent. (Doc. 31-7.)

The March 1, 2019 discovery deadline and May 1, 2019 motions deadline passed without any further filings. On May 16, 2019, the Court ordered the parties to file a status report. (Doc. 21.) Everlog advised of its intent to proceed to trial as scheduled. (Doc. 24.) However, counsel for Better Than Logs moved to withdraw. (Doc. 22.) The Court granted the motion but ordered Better Than Logs to retain new counsel by June 7, 2019, or be subject to default. (Doc. 25.) Better Than Logs did not comply. The Clerk of Court entered its default on June 11, 2019. (Doc. 28.)

2

Everlog now applies for a default judgment. (Doc. 29.) It has submitted affidavits and other documentary evidence in support of its application. (Docs. 30-1, 31, 31-1 to 31-17, 33.) A hearing was held on July 9, 2019. Everlog served written notice of the application and hearing on Better Than Logs. (Doc. 36.) However, Better Than Logs did not file a response to Everlog's application or appear at the hearing. At the hearing, the Court struck Better Than Logs's answer and directed the Clerk of Court to enter Better Than Logs's default on its counterclaims. Then, testimony was heard from Stewart Hansen, Everlog's president, and Dale Williams, Everlog's retained accounting expert. The Court found Hansen and Williams to be credible. In addition, Williams's experience qualifies him to offer expert opinions on business accounting, and his opinions in this case were based on sufficient facts and data and were the product of reliable principles and methods.

## LEGAL STANDARD

Rule 55(b) allows a court to enter default judgment following a defendant's default. Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Accordingly, while default establishes a defendant's liability on all well-pled claims, *see Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1268 (9th Cir. 1992), courts

3

must determine the damages to be awarded, if any, in the default judgment, *see* Fed. R. Civ. P. 55(b)(2).

Notwithstanding a default, whether to enter default judgment against a defendant is a matter of discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Before entering a default judgment, a court must have subject matter jurisdiction over the action and personal jurisdiction over the defendant. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Otherwise, "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo Sys.*, 826 F.2d at 917. Factors to consider include

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

## ANALYSIS

Everlog is entitled to default judgment against Better Than Logs. Everlog's claims for patent infringement under 35 U.S.C. § 271 (Count 1), false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(A) (Count 2), false advertising under 15 U.S.C. § 1125(a)(1)(B) (Count 3), and unfair competition under Montana law (Count 4) are well-pled, establishing Better Than Logs's liability on each count of the Complaint. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Subject

4

matter jurisdiction exists under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1367, and 1338(a). Personal jurisdiction over Better Than Logs exists because Better Than Logs is incorporated in and has its principal place of business in Montana. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Further, the *Eitel* factors weigh in favor of entering default judgment. (*See* Doc. 30 at 17–42.) The next step is to determine appropriate relief. Everlog seeks damages on its patent infringement claim and an injunction against further infringement. It also seeks damages on its false designation of origin and false advertising claims.

## I. Patent infringement damages

A patent holder is entitled to compensatory damages for patent infringement. Specifically, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The claimant has the burden to prove damages. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). "The methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound discretion of the district court." *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898 (Fed. Cir. 1986). Common measures of damages are (1) the patent holder's lost profits and (2) a reasonable royalty. *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

To recover lost profits, Everlog "must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). The generally accepted test requires Everlog to establish "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)). Everlog has satisfied this test.

First, Everlog has established demand for the patented siding product. Hansen testified that the siding accounts for 90 to 95% of Everlog's sales. He also testified about potential customers who ended up purchasing siding from one of Everlog's competitors. This is further supported by Better Than Logs's continued sales, as evidenced in its profit and loss statements. (Doc. 33 at 27–40.)

Second, Everlog has established the absence of acceptable non-infringing substitutes. As Hansen testified, apart from Better Than Logs, only two other companies make similar products: NextGen in Wisconsin and Clear Creek in Missouri. Both are smaller than Everlog and offer fewer options. Everlog is investigating whether NextGen and Clear Creek products infringe the '598 patent. But even assuming NextGen and Clear Creek sell non-infringing products, their small

6

size, limited product array, and distance from Everlog demonstrate a lack of substitutes in the market.

Third, Everlog has established it has the manufacturing and marketing capability to exploit at least some of the demand served by Better Than Logs. With respect to marketing, Hansen testified Everlog advertises directly to builders, architects, and homeowners through online media, at trade shows, and in trade publications such as *Log Home Living* and *Big Sky Journal*. Its customer base includes repeat business and word-of-mouth referrals. However, as Hansen explained, there is substantial overlap in the market for simulated log siding, and at least some customers who considered Everlog ultimately purchased from NextGen or Clear Creek. Accordingly, even with its robust marketing capability, Everlog is unlikely to have captured 100% of Better Than Logs's sales.

With respect to manufacturing, Hansen explained Everlog has three large buildings, ranging from 6,000 to 10,000 square feet, and 12 to 14 employees dedicated to production. He also testified Everlog has automated much of its manufacturing process, which would allow it to increase production, and that Everlog could accommodate an extra $100,000 in sales each month. At the same time, Hansen testified Everlog is quickly outgrowing its facility and that even in Missoula, it does not always have the resources to support its production. Accordingly, it is not certain Everlog could have accommodated 100% of Better Than Logs's sales, even if

it had successfully marketed to all of Better Than Logs's customers. Considering Everlog's marketing and manufacturing capability together, a reasonable inference is that it would have captured 75% of Better Than Logs's sales.

Fourth, Everlog has established the amount of profit it would have made had it captured Better Than Logs's sales. As Williams explained, the amount is calculated by applying Everlog's profit margin to Better Than Logs's revenue from the sale of infringing products since the '598 patent issued on July 4, 2017. After reviewing Better Than Logs's profit and loss statements and tax returns, Williams estimated Better Than Logs collected $2,369,232.00 in infringing sales. Everlog's profit margin is 45.01%, as testified to by both Hansen and Williams, who examined Everlog's internal financial data. If Everlog had captured 75% of Better Than Logs's $2,369,232.00 in infringing sales, as discussed above, then Everlog would have profited $799,793.00, as shown in the following table:

| Estimated lost sales | Estimated lost profit |
| --- | --- |
| 75% of $2,369,232.00 = $1,776,924.00 | 45.01% of $1,776,924.00 = $799,793.00 |

Everlog argues it may be entitled to a reasonable royalty on the remaining 25% of Better Than Logs's infringing sales. However, Everlog has presented no evidence to allow the Court to calculate a reasonable royalty rate. *See Lucent Tech.*, 580 F.3d at 1324 (discussing methods for calculating a reasonable royalty rate). In fact, Hansen testified Everlog would never license its technology. Accordingly, while

8

Everlog has shown it is entitled to $799,793.00 in lost profits, it has not shown it is entitled to a reasonable royalty.

## II. Permanent injunction

A court hearing a patent infringement case "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The traditional four-factor test for injunctive relief applies. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 390 (2006). To obtain an injunction, the patent holder must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391. Whether to grant an injunction is a fact-intensive inquiry. *See, e.g., Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148–57 (Fed Cir. 2011).

Everlog seeks a permanent injunction prohibiting Better Than Logs from further infringement of the '598 patent. Direct competition in a small market weighs in favor of finding irreparable harm, *cf. Bosch*, 659 F.3d at 1151, as does the patent holder having to compete against its own patented product, *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed Cir. 2013). As for the inadequacy of

money damages, Everlog will continue to suffer irreparable harm absent an injunction. The continuation of that harm is enough to establish the inadequacy of money damages. *Bosch*, 659 F.3d at 1155. Further, as Everlog argued at the hearing and as was detailed in Hansen's testimony about the claims protected by the '598 patent, there is no way for Better Than Logs to produce simulated log siding that does not infringe. Absent an injunction, Everlog would have to initiate a new patent infringement suit if Better Than Logs continues to produce infringing products, further demonstrating the inadequacy of money damages. On the balance of hardships, requiring a patent holder to compete against its own patented product, as Everlog would have to do here, generally imposes a substantial hardship. *Id.* at 1156. Finally, protecting patent rights is in the public interest. Further, the public is unlikely to suffer if a supplier of simulated log siding is removed from the market. Accordingly, Everlog is entitled to a permanent injunction against further patent infringement by Better Than Logs.

### III. False designation of origin and false advertising damages

A plaintiff who prevails on a claim for false designation of origin or false advertising under 15 U.S.C. § 1125 is entitled "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). A court has discretion to increase or decrease the recovery if it determines the disgorged profits are inadequate or

excessive. *Id.* "An award of profits is not automatic" under § 1117(a), but depends on equitable considerations. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A.*, 778 F.3d 1059, 1073 (9th Cir. 2015). Awarding disgorged profits is only proper if the defendant's violation was willful. *Id.*

Everlog seeks disgorgement of Better Than Logs's $179,116.00 in profits from 2013 to 2017, during which Better Than Logs advertised its products were manufactured in the United States, but they were imported from China and merely finished with stain in Montana. (Doc. 33 at ¶¶ 10–11.) To support its claim, Everlog relies on excerpts from the deposition of Jonathan Perry, Better Than Logs's president and sole shareholder, (Doc. 30-1); photos of Better Than Logs's shipping crates with the "Made in Montana" logo, (Docs. 31-14, 31-16); copies of Better Than Logs's advertisements describing the products as made in Montana or manufactured and shipped from Montana, (Docs. 31-10 to 31-13); and calculations by Williams, which were based on Better Than Logs's tax returns for the relevant years, (Doc. 33 at 16).

In his deposition, Perry explained that he determined Better Than Logs's products qualified for the Made in Montana program, but not the Made in USA program. (Doc. 30-1 at 12.) Accordingly, Better Than Logs affixed the "Made in Montana" logo, which includes the word "USA," to its shipping crates and advertisements. (Docs 31-12 to 31-14, 31-16.) It is not clear from the record whether

11

Better Than Logs actually qualifies for the Made in Montana program. In any event, in 2016 Better Than Logs described its products as "manufactured and shipped from Montana," (Doc. 31-10), and "manufactured from our factory in Drummond, MT," (Doc. 31-11 at 4), and claimed to "manufacture, sell and ship direct from our factory in Drummond, Montana," (Doc. 31-12). However, from 2015 until 2017, Better Than Logs's concrete pieces, called "blanks," were poured in China. (Doc. 30-1 at 6–8, 11.) Perry's acknowledgment that he looked into the "Made in USA" standards, and his choice to describe the products as manufactured in Montana anyway establishes that Better Than Logs's false designation of origin and false advertising was willful. Everlog has met its burden to show it is entitled to $179,116.00 on its false designation of origin and false advertising claims.

## Conclusion

Default judgment is appropriate in this case. Everlog has proved it is entitled to $799,793.00 in lost profits on its patent infringement claims, $179,116.00 in damages on its false designation of origin and false advertising claims, and a permanent injunction against further infringement. Accordingly,

IT IS ORDERED that Better Than Logs is ENJOINED from making, using, advertising, or selling products that infringe the '598 patent.

IT IS FURTHER ORDERED that Everlog's application for default judgment (Doc. 29) is GRANTED. The Clerk of Court is directed to enter judgment in favor of

Everlog and against Better Than Logs in the amount of $978,909.00, plus costs as allowed by 15 U.S.C. § 1117(a), and to close the case.

DATED this 10th day of July, 2019.

_____  14:54 P.M.
Donald W. Molloy, District Judge
United States District Court